UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON ALZETA RANDOLPH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:16-cv-01188-CKD<br><br><br><br>ORDER |

Plaintiff Sharon Alzeta Randolph seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] In her motion for summary judgment, plaintiff principally argues that the decision of the administrative law judge ("ALJ") "lacks the support of substantial evidence and is a result of legal error." (ECF No. 13 at 5.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 17.)

After carefully considering the record and the parties' briefing, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15).

1

summary judgment, and AFFIRMS the Commissioner's final decision.

I.   BACKGROUND

Plaintiff was born on August 31, 1961 and is a high school graduate.[2] (Administrative Transcript ("AT") 45, 47.) On November 14, 2011, plaintiff applied for DIB and SSI, alleging that her disability began on March 1, 2011. (AT 239–41.) Plaintiff claimed that she was disabled due to a hysterectomy, back problems, dysplasia of the cervix, depression, and anxiety. (AT 100.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on August 26, 2014. (AT 40–87.) The ALJ subsequently issued a decision dated December 7, 2014, determining that plaintiff had not been under a disability as defined in the Act from March 1, 2011, through the date of the ALJ's decision. (AT 25–34.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on April 6, 2016. (AT 2–4.) Plaintiff subsequently filed this action on June 1, 2016, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II.  ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly discounted plaintiff's credibility; (2) whether the ALJ improperly omitted limitations identified by Phillip Cushman, Ph.D., when determining plaintiff's residual functional capacity ("RFC"); and (3) whether the ALJ erred by failing to specifically reference the opinion of treating physician Linda Aragon, M.D.[3]

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

[3] Plaintiff's brief raises the issues in a somewhat different order.

2

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV. DISCUSSION

   A. Summary of the ALJ's findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[4] Preliminarily, the ALJ determined that plaintiff meets

---

[4] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

   Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

   Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

   Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

   Step four: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

   Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

the insured status requirements of the Act through September 30, 2012. (AT 27.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since March 1, 2011, the alleged onset date. (Id.) At step two, the ALJ found that the plaintiff "has the following severe impairments: anxiety disorder, depressive disorder, borderline intellectual functioning, degenerative disease of the lumbar spine and obesity." (Id.) However, at step three the ALJ concluded that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (AT 28.)

Before proceeding to step four, the ALJ assessed plaintiff's RFC, finding that plaintiff could perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except that plaintiff:

> can perform occasional postural activities but is precluded from climbing ladders, ropes and scaffolds; requires a sit/stand option with an opportunity to alternate positions every 30 minutes; she is limited to simple repetitive unskilled tasks with a maximum specific vocational preparation (SVP) of 2 with no interaction with the general public as the primary duties of the job.

(AT 29.) At step four the ALJ determined that the plaintiff is unable to perform any past relevant work. (AT 33.) However, at step five the ALJ found that, in light of plaintiff's age, education, work experience, RFC, and the vocational expert's testimony, there were jobs that existed in significant numbers in the national economy that plaintiff could have performed. (Id.) Therefore, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from March 1, 2011, through December 17, 2014. (AT 34.)

B. Plaintiff's substantive challenges to the Commissioner's determinations

1. *Whether the ALJ improperly discounted plaintiff's credibility*

Plaintiff argues that the ALJ failed to articulate specific, clear, and convincing reasons when rejecting plaintiff's testimony. In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the

---

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035–36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

As an initial matter, the court notes that the ALJ did not entirely discredit plaintiff's allegations of back problems, obesity, depression, and anxiety. Indeed, the ALJ limited plaintiff to "light work with occasional postural activities, a sit/stand op[tion] every 30 minutes and no

5

climbing ladders, ropes and scaffolds to account for her back pain and obesity." (AT 31.) Furthermore, the ALJ limited plaintiff to "simple work with a maximum SVP of 2 and no interaction with the general public as a primary job duty to account for her anxiety and depression." (Id.) Nevertheless, to the extent that the ALJ did discount plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided several specific, clear, and convincing reasons for doing so.

i. Objective medical evidence

"[A]fter a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)). However, while lack of medical evidence cannot form the sole basis for discounting plaintiff's subjective symptom testimony, it is nevertheless a relevant factor for the ALJ to consider. Burch, 400 F.3d at 681.

Here, the ALJ determined that the medical records showed "relatively benign findings with minimal clinical and objective findings that more appropriately supports the reduced range of light [RFC]" rather than plaintiff's subjective complaints of disability. (AT 30.) Substantial evidence supports the ALJ's conclusion.

As to plaintiff's alleged physical limitations, the ALJ concluded that "[t]he record showed a history of back pain with few positive findings" (id.), explicitly referencing evidence in the record: a February 2012 x-ray displaying mild degenerative disc disease (AT 580); a normal lumbar spine x-ray with normal musculoskeletal examination from April 13, 2012 (AT 530–31); a 2013 MRI of the lumbar spine showing disc desiccation, Schmorl's node, and broad-based disc bulge with hypertrophy (AT 936); a normal musculoskeletal examination in December 2013 (AT 991); and a 2014 examination of lumbar spine showing no point tenderness, negative leg raise test, limited range of motion, and ambulation with a cane (AT 978).

As to plaintiff's alleged mental limitations, the ALJ explicitly relied on additional objective evidence in the record (AT 30): multiple progress notes from Elena Fowler, MD in 2013 showing a depressed and anxious mood, but with fair judgment and insight and a logical

6

thought process (AT 953–63); progress notes from Sharon Jensen, LCSW on January 1, 2014 displaying anxious mood, but also a logical thought process, fair judgment and insight, as well as difficulty remembering the timelines of her sobriety dates (AT 981); and plaintiff's own assertion from January 1, 2014 that she was starting to have improved self-esteem (AT 980). Thus, substantial evidence in the record supports the ALJ's conclusion that the objective medical evidence did not fully corroborate plaintiff's subject complaints.

      ii.      Conservative treatment

Plaintiff's relatively conservative treatment was also a proper consideration. See Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (reasoning that a favorable response to conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

The ALJ discounted plaintiff's credibility in part because "[t]he medical evidence of record shows fairly conservative, infrequent treatment for her impairments, with the claimant achieving relatively good results on prescription medications." (AT 30.) Substantial evidence in the record supports this conclusion. Medical records indicate that plaintiff had her back pain treated with steroid injections and physical therapy, which helped alleviate her pain. (AT 995.) At the hearing, plaintiff admitted that prescription medication helps with her pain, and that she does not suffer any side effects from the medication. (AT 55–56.) Plaintiff also testified that cognitive therapy was helpful for her depression and anxiety. (AT 57.) All of this reportedly effective treatment was fairly conservative in nature, and serves as a valid basis to discount plaintiff's credibility.

      iii.      Failure to follow treatment

"[I]n assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . . Moreover, a claimant's failure to assert a good reason for not seeking treatment, or a finding by the ALJ that the proffered reason is not believable, can cast doubt on the sincerity of the

claimant's pain testimony." Molina, 674 F.3d at 1113–14 (citation and quotation marks omitted).

Here, the ALJ found that "[t]he record also reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged." (AT 31.) Specifically, the ALJ relied on the fact that plaintiff refused to quit smoking and to attend nutritional counseling, recommended by her treating physician. (Id.) The record demonstrates that plaintiff was smoking from at least 2012 through 2014, and was counseled to stop (AT 975, 978) and that she refused nutritional counseling after gaining 50 lbs and admitting to emotional eating (AT 980). The record suggests that plaintiff's mental health conditions were not so acute as to render her unable to comply with the doctors' orders, as she was taking other medication and attending psychological counseling. (AT 55–57.) Therefore, substantial evidence supports the ALJ's conclusion that plaintiff's failure to follow doctors' orders casts doubt on her credibility.

                iv.        Condition controlled with medication

A condition that can be controlled or corrected by medication is not disabling for purposes of determining eligibility for benefits under the Act. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983). In discounting plaintiff's credibility, the ALJ noted that "the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms." (AT 31–32.) This conclusion is supported by substantial evidence in the record of the relatively successful conservative treatment plaintiff had received. (See AT 55–56; 995.)

                v.        Daily activities

"While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citations and quotation marks omitted); see also Burch v. Barnhart, 400

F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility).

Here, plaintiff admitted that her daily activities included watching TV, preparing meals, performing some light chores, performing personal care tasks, shopping, and talking on the phone. (AT 299–350.) The ALJ determined that "[s]ome of the physical and mental abilities, as well as social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment." (AT 31.)

To be sure, the record also contains some contrary evidence—such as plaintiff's need to use a cane to walk and her need to constantly shift positions due to back pain—suggesting that plaintiff's activities are more limited. (AT 53–54.) However, it is the function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be reasonable and supported by substantial evidence. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all of the activities and noting that the ALJ's interpretation "may not be the only reasonable one"). As the Ninth Circuit explained:

> It may well be that a different judge, evaluating the same evidence, would have found [the claimant's] allegations of disabling pain credible. But, as we reiterate in nearly every case where we are called upon to review a denial of benefits, we are not triers of fact. Credibility determinations are the province of the ALJ. . . . Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision.

Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

     vi.  Improper reason presented along with proper reasons

The ALJ also pointed to reported inconsistencies regarding when plaintiff stopped her substance abuse (cocaine and alcohol). (AT 31.) These inconsistencies were noted by plaintiff's

mental health clinical social worker, Sharon Jensen LCSW (AT 981), and they also appeared in plaintiff's hearing testimony (AT 58–63). For example, while testifying plaintiff had a hard time pinning down exactly when she stopped drinking, offering different dates, and finally settling on a date that indicated she had stopped attending AA meetings before she had stopped drinking. (AT 62.)

Plaintiff argues that these are improper reasons to discredit her credibility, because "[i]f substance abuse was an issue then the ALJ should have identified it as a severe impairment and undergone a[] Social Security Ruling 13-2p analysis." (ECF No. 13 at 18.) This argument is not well-taken. The ALJ did not conclude that plaintiff's substance abuse was an issue itself. Rather, the ALJ questioned plaintiff's credibility, in part, because plaintiff could not provide a consistent narrative regarding when she stopped using cocaine and alcohol. Such inconsistencies are proper considerations when weighing a plaintiff's credibility. See Thomas, 278 F.3d at 958–59.

In any event, even if these inconsistencies regarding plaintiff's substance abuse were not legitimate reasons to discount her testimony, the error is harmless because the ALJ provided several other valid reasons for only partially crediting plaintiff's testimony. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

In conclusion, this court may not second guess the ALJ's credibility determination because it is based on several specific, clear, and convincing reasons, which are supported by substantial evidence in the record. Lingenfelter, 504 F.3d at 1035–36.

2. *Whether the ALJ improperly omitted limitations identified by Phillip Cushman, Ph.D., when determining plaintiff's RFC*

Plaintiff argues that the ALJ mischaracterized the evidence by giving significant weight to the report of examining consultative psychologist Dr. Cushman, but also omitting from plaintiff's RFC four of the seven limitations Dr. Cushman outlined in his report. (See ECF No. 13 at 8–11.)

An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 404.1545(a)(1). "It is clear that it is the responsibility of the ALJ, not the

claimant's physician, to determine residual functional capacity." <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545). The ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. <u>See</u> <u>Turner v. Comm'r Soc. Sec. Admin.</u>, 613 F.3d 1217, 1222–23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

In his consultative report, Dr. Cushman opined that plaintiff

> will have difficulties performing detailed or complex tasks in a work setting. She is capable of performing simple and repetitive tasks . . . She is capable of regularly attending and consistently participating at this time, but will oftentimes call in sick due to her anxiety and worry. Supportive counseling would help alleviate some of this. She is capable of working a normal work day and work week, but will complain of fatigue. Special or additional supervision is needed in the area of monitoring for substance abuse. She may, at times, need extra repetitions when trying to teach her a new task. She does appear capable of following simple verbal instruction from supervisors, but not complex instructions. She may have difficulties dealing with the usual stressors encountered in a competitive work environment.

(AT 546.) According this report significant weight, the ALJ concluded that "[t]he examiner's findings are consistent with the record showing some treatment for anxiety and depression [see AT 55–57, 953–63, 981], and support the limitation to simple work with limited contact with the general public due to her mental health impairments."

The ALJ relied on the main thrust of Dr. Cushman's opinion—that plaintiff was capable of working, with some limitations due to her anxiety and depression—and incorporated it into the RFC determination. (<u>See</u> AT 29.) Furthermore, the ALJ specifically relied on other objective evidence regarding plaintiff's treatment for anxiety and depression (AT 953–63, 981) and plaintiff's own testimony that such treatment was successful (AT 55–57) when crafting the RFC. Hence, the ALJ did not err in her RFC determination because it is supported by substantial evidence and consistent with Dr. Cushman's opinion, even though it does not track his opinion word for word. <u>See</u> <u>Turner</u>, 613 F.3d at 1222–23.

////

1                3.      *Whether the ALJ erred by failing to specifically reference the opinion of*
2                        *treating physician Linda Aragon, M.D.*

Plaintiff asserts that the ALJ committed reversible error by failing to consider Dr. Aragon's opinion that plaintiff could probably get a desk job. (See ECF No. 13 at 6–8.) "Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance. . . . If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight." SSR 96-8P. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830–31 (9th Cir. 1995). In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. Id. at 830.

At the same time, "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted). "[T]he ALJ is not required to discuss evidence that is neither significant nor probative." Id.

On two occasions, January 17, 2013 and December 10, 2013, Dr. Aragon noted that "pt appears intelligent and prob could get desk job." (AT 585, 993.) Each time this statement was entered into the medical record after Dr. Aragon indicated that she had filled out "GA form done with 'yes/no' answers both checked for 'keeping appts,' and 'can she work.'" (Id.) These forms were apparently completed to allow plaintiff to obtain food stamps and welfare payments. (See Id. ("GA per pt will allow her to get food stamps and some money each month")).

Dr. Aragon's observations do not amount to a formal medical opinion regarding plaintiff's RFC or whether she is disabled as defined in the Act. Furthermore, even if Dr. Aragon had formally opined that plaintiff probably could get a desk job, such a conclusory statement would be of dubious value. As explained above, the ALJ based her credibility findings and RFC determination on substantial evidence in the record. The ALJ did not err by failing to specifically

mention Dr. Aragon's off-hand and conclusory opinion that plaintiff could probably get a desk job, because these statements were neither significant nor probative.[5]  See Howard ex rel., 341 F.3d at 1012.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is DENIED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 17) is GRANTED.
3. The final decision of the Commissioner is AFFIRMED, and judgment is entered for the Commissioner.
4. The Clerk of Court shall close this case.

Dated:  September 13, 2017

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/ss.16-1188.randolph. order re MSJ

---

[5] Indeed, plaintiff has failed to demonstrate how such a statement, even if true, is inconsistent with the ALJ's RFC determination.  Plaintiff argues that the ALJ's failure to discuss this so-called opinion creates ambiguity as to whether plaintiff is actually limited to sedentary work. (ECF No. 13 at 8.)  Yet, Dr. Aragon's conclusory statement is not enough to establish a sedentary limitation under the Act, as it is unsupported by objective evidence in the record.  Whereas, the RFC determination in this matter is both supported by substantial objective evidence in the record, and consistent with the colloquial nature in which Dr. Aragon noted that plaintiff could probably get a desk job.